**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                          Case No. 97-CR-81493-BC

ALAN MIKELL and CHRISTOPHER GRISEL,

    Defendants.
                                                 /

**ORDER DENYING DEFENDANT CHRISTOPHER GRISEL'S AUGUST 2, 2005 AND SEPTEMBER 12, 2005 MOTIONS AND DENYING DEFENDANT'S DECEMBER 3, 2004 MOTION FOR RECONSIDERATION**

This matter is before the court following an evidentiary hearing conducted on August 17 and 18, 2005, to determine whether the court's November 18, 2004 order should be vacated. Also pending before the court are motions and briefs related to the court's July 12, 2005 order, which denied Defendant Grisel's motion for a new trial based on newly discovered evidence of alleged perjury and granted, in part, Defendant Mikell's December 3, 2004 "Motion for Reconsideration." For the reasons stated below, the court will deny Defendant Grisel's "Motion for Leave of the Court to File Response to Government's Post-Hearing Brief and for Hearing" and deny his "Motion for Hearing on Defendant Grisel's Request for Leave to File Response to Government's Post-Hearing Brief . . ." The court will also decline to vacate or otherwise modify its November 18, 2004 order, as first requested in Defendant Mikell's December 3, 2004 "Motion for Reconsideration."[1]

---

[1] Defendant Grisel filed a "Notice of Joinder" to this motion on December 9, 2003. (Dkt. # 393.)

## I. BACKGROUND

This case comes with fairly complicated factual and procedural backgrounds, which have been set forth adequately in previous orders of the court. (*See* 11/18/04 Order; 7/12/05 Order.) The court will briefly outline here only the portion of the procedural history which is relevant to the issues currently before the court.

Following the Sixth Circuit's remand of this criminal case, *United States v. Mikell*, 84 Fed. Appx. 485 (6th Cir. 2003), the court considered and denied Defendants' two motions for a new trial. (11/18/04 Order.) During the hearing conducted on the motions, the court inquired as to whether the parties desired an evidentiary hearing and both sides indicated that they did not. (*Id.* at 4-5.) After the court issued its November 18, 2004 order, however, Defendant Grisel and the Government reversed their positions and argued that an evidentiary hearing was required. (7/12/05 Order at 21.) Moreover, Defendant Mikell filed a motion for reconsideration of the November 18, 2004 order. In his motion, Defendant Mikell argued that a hearing was not necessary, principally because he claimed a new trial was mandated as a matter of law. (7/12/05 Order at 21-22.)

On July 12, 2005, the court issued an order denying Defendant Grisel's motion for a new trial and granting in part Defendant Mikell's motion for reconsideration of the November 18, 2004 order. Specifically, with respect to Defendant Grisel's motion, the court found that while Grisel had met the first two of the prongs of the standard for the granting of a new trial based on newly discovered evidence of perjury, he had not met

the remaining two prongs.² (*Id.* at 14-15.) Thus, despite the fact that the court expressed concern regarding the trial testimony of Joseph Purtell and Richard Green, the motion for a new trial based on newly discovered evidence of perjury was denied. (*Id.* at 24.) The court also granted Defendant Mikell's motion for reconsideration in part. (*Id.*) Specifically, the court rejected Mikell's argument that a reversal of Defendants' convictions was mandated as a matter of law under *Holloway v. Arkansas*, 435 U.S. 475 (1978), but ordered that an evidentiary hearing should be conducted in order to determine whether the court's November 18, 2004 order should be vacated. (*Id.*)

An evidentiary hearing was conducted on August 17 and 18, 2005, and the matter is before the court to consider whether any of the evidence presented requires the court to vacate or otherwise modify its November 18, 2004 order.³

## II. STANDARD

### A. Motions for New Trial

Federal Rule of Criminal Procedure 33 governs motions for a new trial. It provides, in relevant part, "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interests of justice so requires." Fed. R. Crim. P. 33(a). A decision to grant or deny a motion for a new trial under Rule 33 lies within the discretion of the district court. *See United States v. Lattner*, 385 F.3d 947, 958 (6th Cir.

---

²A motion for a new trial based on newly discovered evidence should be granted only where: (1) the new evidence was discovered after trial; (2) the evidence could not have been discovered earlier with due diligence; (3) the evidence is material and not merely cumulative or impeaching; and (4) the evidence would likely produce an acquittal. *United States v. Braggs*, 23 F.3d 1047, 1050 (6th Cir. 1994); *United States v. O'Dell*, 805 F.2d 637, 640 (6th Cir. 1986).

³ The court regrets the delay in adjudicating this motion, a portion of which is due to the hearing having coincided with law clerk transition.

3

2004) ("The district court's denial of a motion for new trial is reviewed under an abuse of discretion standard.") (citing *United States v. Gaitan-Acevedo,* 148 F.3d 577, 589 (6th Cir. 1998)).

### B. Motions for Reconsideration

Rule 7.1(g) of the Local Rules for the Eastern District of Michigan provides that a motion for reconsideration shall be granted only if the movant can (1) "demonstrate a palpable defect by which the court and the parties have been misled," and (2) show that "correcting the defect will result in a different disposition of the case." E.D. Mich. LR 7.1(g)(3). "A 'palpable defect' is 'a defect that is obvious, clear, unmistakable, manifest, or plain.'" *United States v. Lockett*, 328 F. Supp. 2d 682, 684 (E.D. Mich. 2004) (citing *United States v. Cican,* 156 F. Supp. 2d 661, 668 (E.D. Mich. 2001)). A motion for reconsideration which presents the same issues already ruled upon by the court, either expressly or by reasonable implication, will not be granted. E.D. Mich. LR 7.1(g)(3); *Czajkowski v. Tindall & Assocs., P.C.,* 967 F.Supp. 951, 952 (E.D. Mich. 1997).

### III. DISCUSSION

### A. The Government's "Motion for Leave of Court to File Post-Hearing Brief"

On July 12, 2005, the Government filed a "Motion for Leave of Court to File Post-Hearing Brief." (Dkt. # 418.) Accompanying the motion was a post-hearing brief related to the alleged perjury of Joseph Purtell and a supporting affidavit. (Dkt. ## 419 & 420.) On the same day, the court issued its order denying Defendant Grisel's motion for new trial and granting in part and denying in part Defendant Mikell's motion for reconsideration. (Dkt. # 417.) The Government's motion, brief and affidavit do not in substance or in form purport to seek reconsideration of the court's July 12, 2005 order,

4

nor could they reasonably have been so intended, having been filed on the same day as the order. Indeed, the docket indicates that the court's order was filed at 3:48 p.m., and the Government's motion was filed at 4:09 p.m. (*See* Notices of Electronic Filing ("NEFs") for Dkt. ## 417 & 418.) It is obvious that upon receipt of the July 12, 2005 order, the Government did not immediately read the 25-page opinion, draft its motion and supporting brief, obtain an affidavit of Joseph Purtell, and file all the assembled documents just twenty-one minutes after the order. The motion, brief, and supporting affidavit were prepared prior to the issuance of the court's order and were filed simultaneous with the docketing of the court's order.

Nonetheless, Defendant Grisel urges this court to construe the Government's July 12, 2005 motion as a motion seeking reconsideration of the court's July 12, 2005 order, and presents his motion seeking leave to file a response to the Government's motion. (*See* Def. Grisel's 8/2/05 Mot., Dkt. # 422.) No proposed response accompanied this motion. Defendant Grisel subsequently filed another motion, again requesting an opportunity to file a response brief to the Government's July 12 motion, which Defendant Grisel again contends should be construed as a motion for reconsideration. (Def. Grisel's 9/12/05 Mot., Dkt. # 426.) As with the August 2, 2005 motion, no proposed response brief accompanied Defendant's September 12, 2005 motion. Thereafter, the Government filed a response to Defendant Grisel's motion, in which it stated, not surprisingly, that at the time it filed the July 12 motion it had not received the court's July 12 order. (Gov't.'s 9/27/05 Resp. at 2.) The Government explained that its July 12 motion was simply an attempt to place further evidence or argument before the court prior to the court's ruling on the merits of the motion for new

5

trial based on the Green and Purtell testimony, an attempt which was, of course, to no avail given the timing referred to above. The Government urges the court to deny Defendant Grisel's request to further expand the record on a matter which has been closed. Finally, on October 17, 2005, Defendant Grisel filed an untimely[4] reply brief, in which it essentially sought reconsideration of this court's July 12, 2005 order.[5]

The court will deny Defendant Grisel's August 2 and September 12 motions to file a response to what Grisel characterizes as the Government's July 12, 2005 motion for reconsideration. The July 12, 2005 motion was not an "unusually styled Motion for Reconsideration," as Defendant Grisel would have this court believe. (*See* Def. Grisel's 10/17/05 Reply at 9.) It was, instead, only what it was labeled, a motion to submit a post-hearing brief for the court's consideration in ruling on the motion for new trial based on the Green and Purtell testimony. Further, inasmuch as this court did not consider the material submitted in the Government's July 12, 2005 motion before issuing the July 12, 2005 order – or, indeed, for any purpose – justice does not require the submission of a response by Defendant Grisel. Defendant's motions will be denied.

---

[4]By application of the Federal Rules of Civil Procedure and the local rules, Defendant's reply was due, at the latest, on October 11, 2006. *See* Fed. R. Civ. P. 6; E.D. Mich. LR 6.1 & 7.1(2)(C).

[5]The court will not construe Defendant Grisel's reply brief, filed through counsel, as a motion for reconsideration. Had Defendant Grisel desired to file such a motion, his counsel should have filed it consistent with the local rules and within ten days of the issuance of the court's July 12, 2005 order. *See* E.D. Mich. LR 7.1(g)(1). The court does not encourage back-door attempts to revisit closed issues.

**B. Motion for Reconsideration of November 18, 2004 Order**

**1. July 12, 2005 Order**

In the court's July 12, 2005 order, granting in part and denying in part Defendant Mikell's motion for reconsideration, the court rejected Mikell's argument that a reversal of Defendants' convictions was mandated as a matter of law under *Holloway v. Arkansas*, 435 U.S. 475 (1978), but ordered that an evidentiary hearing should be conducted in order to determine whether the court's November 18, 2004 order should be vacated.[6] (7/12/05 Order at 24.) Citing *Mickens v. Taylor*, 535 U.S. 162, 168 (2002), the court held:

> The court is not convinced that Defendant Mikell is automatically entitled to a new trial in this case based on the court's failure to consider or probe the alleged conflict of interest in 1999, and it will order an evidentiary hearing. This is not a case where the court *forced* counsel with an alleged conflict to continue representing a party. *See Mickens* 535 U.S. at 168 (*Holloway* [*v. Arkansas*, 435 U.S. 475 (1978)] creates an automatic reversal rule *only* where defense counsel is forced to represent codefendants over his timely objection, unless the trial court has determined that there is no conflict."). In this case, the court *permitted* the withdraw of the attorney allegedly conflicted once this issue was presented to the court and did not *force* continued representation, making it similar to those cases where courts have neglected a duty to inquiry about a conflict.[7] *See id.* at n. 3; *Wood v. Georgia*, 450 U.S. 261 (1981)

---

[6]In light of this holding, the court declines to revisit the *Mickens/Holloway* issue. Defense counsel has, to some extent, utilized the August 2005 evidentiary hearing to reiterate the assertion that prejudice should be presumed in this case and a new trial mandated. As outlined in this court's July 12, 2005 order, however, the purpose of the evidentiary hearing was to allow the parties to present further evidence which could potentially impact this court's November 18, 2004 order. (7/12/05 Order at 24.) It was for this limited purpose that the court conducted the two-day hearing in August of 2005. The court will not allow the parties to use the hearing to argue the merits of this court's legal conclusion in its July 12, 2005 order that under *Mickens* prejudice was not presumed. (7/12/05 Order at 22-24.)

[7]For this reason, the court also rejects Defendant Mikell's argument that *McFarland v. Yukins*, 356 F.3d 688 (6th Cir. 2004) is directly applicable to the facts of this case. Contrary to the facts of this case, in *McFarland* the defendant, "like the *Holloway* petitioners, was forced, over her objection to go to trial with counsel who was actively representing a co-defendant." *Id.* at 714. The Sixth Circuit held that "*[f]orcing* McFarland to go to trial with conflicted counsel contradicts the clearly established precedent of *Holloway v. Arkansas*." *Id.*

8

(remanding for lower court inquiry).

Defendant Mikell argues that the court's failure to conduct an inquiry into the potential self-interest conflict of his co-counsel at trial, triggers the automatic reversal rule presuming prejudice. In essence, Mikell points to the court's failure to inquire as the reason to presume prejudice. As the Sixth Circuit has explained, however, in *Mickens*, the Supreme Court "rejected the approach of several circuits which determined that a trial court's failure to inquire into a conflict of interest compels automatic reversal of the conviction." *Moss*, 323 F.3d at 471. The Court "held that the trial court's failure to inquire into a potential conflict of interest on the part of the defendant's attorney, about which *the court knew* or reasonably should have known, does not automatically require reversal of the conviction." *Id.* (emphasis added). The *Mickens* Court explained:

> [A] proposed rule of automatic reversal when there existed a conflict that did not affect counsel's performance, but the trial judge failed to make the *Sullivan* mandated inquiry, makes little policy sense . . . . The trial court's awareness of a potential conflict neither renders it more likely that counsel's performance was significantly affected nor in any way renders the verdict unreliable. Nor does the trial judge's failure to make the *Sullivan* mandated inquiry often make it harder for reviewing courts to determine conflict and effect, particularly since those courts may rely on evidence and testimony whose importance only becomes established at trial.

*Mickens*, 535 U.S. at 172-73. As Supreme Court Justice Anthony Kennedy noted in his concurring opinion, "[t]he constitutional question must turn on whether trial counsel had a conflict of interest that hampered the representation, *not* on whether the trial judge should have been more assiduous in taking prophylactic measures." *Id.* at 179 (Kennedy, J., Concurring) (emphasis added). Inquiring about the conflict at this stage of the proceedings will avoid any such neglect by the court and will afford Defendants an opportunity to establish whether an actual conflict existed and whether it adversely impacted their trial.

Conducting an evidentiary hearing regarding the alleged conflict at this stage cuts against Mikell's argument that the court failed to inquire about an actual conflict. While the court did not originally pass on the motions for mistrial based on this alleged conflict in 1999, it granted Defendants' motions for acquittal, thus, in the court's prior view, obviating the need to do so. Had the court denied Defendants' motions for acquittal, the court could have examined the pending motions for mistrial and, under existing law, conducted an inquiry into the alleged conflict and its impact on the representation of Defendant Mikell.

9

(7/12/05 Order at 22-24.) Accordingly, the court granted Defendant's motion for reconsideration only "inasmuch as the court will hold an evidentiary hearing and render a determination of whether to vacate its November 18, 2004 'Order Denying Defendants' Motion for New Trial.'" (*Id.*)

### 2. Evidentiary Hearing[8]

During the two-day evidentiary hearing in August of 2005, Defendants presented testimony, most of which was either largely irrelevant to the limited issue before the court or duplicative of evidence already presented to the court. Further, much of the evidence consisted of testimony explaining matters which could be found on the court's docket or were otherwise matters of public record. None of the evidence is sufficient to persuade the court that its November 18, 2004 order should be vacated or in any way modified.

First, Defendant Mikell called attorney Steve Harris as a witness. Among other topics, Mr. Harris testified regarding his representation of Defendant Mikell, both in this case and in previous matters, including matters related to Walter Hacker. Mr. Harris confirmed that, along with Harold Gurewitz, he operated as co-counsel to Defendant

---

[8] The court notes preliminarily that there was some discussion at the beginning of the hearing as to whether the Assistant United States Attorney assigned to this case, James A. Brunson, could be called to testify. After hearing argument from both sides on the issue, the court found that calling Mr. Brunson as a witness against his wishes would be an "unnecessary complication" in this case, when the heart of what Defendants wished to elicit from Mr. Brunson could be found on this court's docket or submitted via written or oral proffer. While defense counsel suggests that live testimony would "fill in the mortar" surrounding the essential facts which are a part of the record, the court reiterates now that such live testimony from the Assistant United States Attorney of record is not necessary under the particular facts of this case.

Mikell in this criminal matter, and was questioned regarding his responsibilities in that role. Throughout his testimony, Mr. Harris consistently stated that his recollection was not clear and that he would rely on court papers or transcripts to answer the questions posed to him. Mr. Harris did recall that a chart was used during the criminal trial which indicated that his firm was paid out of the sale of the Real Pinconning Cheese ("RPC") cheese inventory. Mr. Harris also testified that his role in the trial of this case would, in some ways, benefit both Defendant Mikell and Defendant Grisel. Nonetheless, when questioned further regarding his duties as co-counsel to Defendant Mikell, Mr. Harris could not state with any degree of reliability how the questioning of the witnesses was allocated and how the work was divided. Mr. Harris, however, testified that Mr. Gurewitz operated as lead counsel and therefore had the "prominent" role as counsel in the trial. (*See* 8/17/06 Tr., Harris Test.)

Next, Agent Craig Georgeff testified. Agent Georgeff principally testified regarding the issuance and execution of various search warrants in connection with the investigation of this criminal matter. Specifically, Agent Georgeff testified that he was personally present during the execution of the search warrant at Defendant Grisel's home and office in Dallas, Texas. Agent Georgeff testified that during the execution of that search warrant, Defendant Grisel was allowed to make a private telephone call, and that after he made the call he told Agent Georgeff that he had called Steve Harris, his attorney in Tulsa.[9] Agent Georgeff insisted quite emphatically in response to questioning by Defendant Grisel's attorney, that the name Defendant Grisel gave was

---

[9]This exchange was discussed in this court's November 18, 2004 order. (*See* 11/18/04 Order at 10-12.) Nothing in Agent Georgeff's August 17, 2005 testimony materially impacts this court's conclusions in its November 18, 2004 order.

11

"Steve Harris," not "Randy Duncan." Agent Georgeff further testified that this name was witnessed by another agent and memorialized in his report, a copy of which was supplied to Mr. Gurewitz and David B. Herrington (Defendant Grisel's trial counsel) thirteen months prior to trial. Moreover, Agent Georgeff denied that Mr. Harris ever "figured largely" in the investigation of this case, but that Agent Georgeff understood Mr. Harris's role to be only an attorney to Defendant Mikell or Defendant Grisel, or to a combination of both of them. (*See* 8/17/06 Tr., Georgeff Test.)

Defendant Grisel next called Daniel Opperman to testify. Of primary importance to the inquiry before the court, Mr. Opperman explained his statement to Joseph Purtell, discussed in this court's November 18, 2004 order that Mr. Harris was "calling the shots" in connection with the civil litigation between National Farmers Organization Dairy Custodial Account ("NFO") and RPC. (*See* 11/18/04 Order at 9-10.) Mr. Opperman testified that this statement referred to Mr. Harris's role with respect to the litigation's legal strategies, not with respect to the underlying transactions which formed the basis of that litigation. He also testified that the statement referred to one particular legal strategy, regarding the decision to depose Mr. Purtell. When questioned further about particulars of the litigation and certain events that occurred, Mr. Opperman testified that his memory regarding those events was "average at best." (*See* 8/17/06 Tr., Opperman Test.)

Finally, Defendant Grisel testified. Much of Defendant Grisel's testimony was irrelevant to the specific issue before the court, and appears to the court as an attempt to insert "evidence" into the record to set the stage for possible arguments on appeal or on collateral review. Defendant Grisel testified regarding his understanding of Mr.

Harris's role in the criminal case. He stated that at times he personally followed Mr. Harris's legal advice and that his court appointed attorney primarily followed Mr. Harris's lead, especially with respect to the portions of the trial directed at the law of secured transactions. The obvious intended implication of Defendant Grisel's testimony was the sentiment that when Mr. Harris withdrew, Defendant Grisel was in essence left without counsel. Defendant Grisel further testified that during the execution of the search warrant on his home and office he telephoned Randy Duncan, not Mr. Harris. Defendant Grisel was further questioned by Mr. Gurewitz regarding Mr. Harris's past representation of Defendants Mikell and Grisel.

After the conclusion of Defendant Grisel's testimony, Mr. Gurewitz discussed a document with sixteen numbered sections, which he proceeded to summarize for the court. (*See* 8/17/05 "Summary of Evidence," Dkt. # 423.)[10] Mr. Gurewitz also argued that fundamentally the issue before the court was whether Defendant Mikell received a fair trial, which Mr. Gurewitz argued he did not. Mr. Gurewitz argued that one reason for this was the withdrawal, mid-trial, of Mr. Harris. This withdrawal, according to Mr. Gurewitz, was not adequately explained to the jury. Mr. Gurewitz also argued that the Government must have known that Mr. Harris's involvement in the factual transactions

---

[10]The Government filed a written response to the "Summary of Evidence" on September 2, 2005. (*See* Dkt. # 424.) The Government's response did not significantly disagree with most of Defendant's "Summary of Evidence." The most substantial disagreement occurred with respect to paragraphs 12 and 14-16. Nonetheless, the Government's disagreement was primarily directed at Defendant's citations to court transcripts, which are matters of record. More fundamentally, both parties' filings are essentially written memorializations of their arguments during the evidentiary hearing. For this reason, the court will not strike Defendant's "Summary of Evidence," as requested by the Government. Both parties have thoroughly placed their positions on the record.

of this case would become an issue at trial, because the Government intended to introduce Exhibit number 532,[11] and therefore must have considered the possibility of the crime fraud exception as a basis for introducing a letter from an attorney to a client. Further, Mr. Gurewitz argued that when the Government accused Mr. Harris as being an unindicted co-conspirator, everything in the case had to be looked at in a different light, including and must significantly, the waiver of the advice of counsel defense. Mr. Gurewitz also suggested that Mr. Harris perhaps did not conduct proper re-direct examinations based upon his purported role as an unindicted co-conspirator, and concluded by again arguing that Defendant Mikell was automatically entitled to a new trial under *Holloway v. Arkansas*, 435 U.S. 475 (1978).

On behalf of Defendant Grisel, Mr. Blake Atkin argued that Mr. Harris essentially operated as counsel to both Defendant Mikell and Defendant Grisel, and thus Defendant Grisel is equally entitled to a new trial based on the alleged prejudice associated with Mr. Harris's conflict of interest. Mr. Atkin adopted Mr. Gurewitz's argument relating to the waiver of the advice of counsel defense, stating that Mr. Harris should have warned Defendants Mikell and Grisel not to waive that defense and that his alleged failure to do so resulted from his conflict of interest. At that point, Mr. Atkin's argument seemed to veer off-topic to an extent, addressing an alleged violation of Mr. Grisel's constitutional right to remain silent. Mr. Atkin further reiterated the testimony of Mr. Grisel to the effect that once Mr. Harris withdrew from the case, Mr. Grisel was essentially left without counsel. Mr. Atkin concluded by arguing that the Government

---

[11]Exhibit Number 532 was a letter concerning the "Hacker Investment/transactions," sent by Mr. Harris to Defendants Mikell and Grisel. (*See* 11/18/04 at 13.)

14

improperly implicated Mr. Harris and thus improperly "derailed" the case. (*See* 8/18/06 Tr., Atkin Argument.)

The Government presented its closing argument, asserting that the Defendants' position with respect to Mr. Harris's alleged self-interest conflict has evolved. According to the Government, Defendants initially argued that the Government should not have made the accusations against Mr. Harris, but now they have taken the position that Mr. Harris indeed had a conflict which mandates a new trial. The Government suggests that the contradictory nature of these assertions confirms that the Harris situation was invited error, about which the Government claims to have been concerned since it first raised Harris's problematic involvement in the case prior to trial. The Government argued that Mr. Harris was involved in this case factually, and the defense knew this from pre-trial discovery yet allowed him to remain as Mr. Mikell's counsel. The Government reiterated its contention that the defense's decision to keep Mr. Harris as co-counsel was a device for obtaining post-trial relief in the event of a conviction, despite the fact that there was a waiver of any conflict as a result of Mr. Harris's involvement in the case. The Government also argued that any allegation that Mr. Harris did not adequately examine Mr. Green because of his alleged conflict of interest cannot be sustained; instead, the Government argued that Mr. Green was a difficult witness who "Clarence Darrow himself" would have had difficulty examining. (8/18/06 Tr., Gov't Argument.) Indeed, the Government pointed out that Mr. Herrington likewise did not cross examine Mr. Green and that if Mr. Gurewitz thought that Mr. Harris should have further examined Mr. Green he could have insisted that Mr. Harris do so. The Government next argued that the case law supports its position that a conflict does not

arise until the attorney knows about an actual conflict. To that end, the Government stressed Mr. Harris's testimony that the conflict arose on April 12, 1999, at which point Mr. Harris voluntarily withdrew. The Government concluded by arguing that here the waivers were solid, that any error was invited error, and that, if Defendants had desired further assistance from Mr. Harris, they could have at least asked for such assistance or for an adjournment to seek alternative assistance.

Defendants were allowed a final chance to make any rebuttal argument. Mr. Gurewitz reasserted his position that a self-interest conflict existed prior to April 12, 1999, which was the date that the Government affirmatively accused Mr. Harris of being an unindicted co-conspirator. Mr. Gurewitz re-asserted that the Government must have known of this conflict well before trial, inasmuch as it intended to introduce Exhibit 532 and must have thought of the crime-fraud exception to the attorney client privilege as a vehicle by which to attempt to introduce the exhibit. Mr. Gurewitz argued that Mr. Harris's conflict and withdrawal had a negative impact on the defense's case, both respect to the Green and Purtell examination and also with respect to the effect Mr. Harris's disappearance had on the jury. Mr. Gurewitz argued that the alleged prejudice suffered as a result of the Harris conflict existed even though Mr. Harris co-counsel along with Mr. Gurewitz. In response to questions from the court, Mr. Gurewitz argued that the Government should have made its "unindicted co-conspirator" allegation prior to trial, and that the Harris conflict was not fully waived in that Mr. Harris was not present when Defendant Mikell waived the defense.

Finally, Mr. Atkin argued briefly that Mr. Harris's departure was such an "unusual circumstance" that it necessarily negatively impacted the defense's case. (8/18/06 Tr., Atkin Argument.)

### 3. Analysis

Having reviewed all of the submitted materials, previous orders of the court, and the transcript of the two-day evidentiary hearing, and having fully considered the parties' arguments and positions, the court will decline to modify its November 18, 2004 order. The court finds that the evidence submitted during the August 2005 evidentiary hearing does not materially affect this court's conclusion in its November 18, 2004 order that a new trial was not warranted due to the Harris conflict issue.

Defendants seem to be arguing that (1) the Government improperly introduced evidence relating to Mr. Harris and unfairly suggested that he stood as an unindicted co-conspirator, and also that (2) Mr. Harris's conflict of interest, in his alleged role as an unindicted co-conspirator, created an unfair trial because of his purported lack of zealous representation. These two positions are, to a large extent, contradictory. It appears that Defendants are not entirely sure whether they want to argue that Mr. Harris indeed labored under a conflict of interest or whether they want to argue that the Government improperly painted Mr. Harris as such. Because Defendants do not definitively take a position on this issue, it appears to the court that they are attempting to lay a factual basis for *both* positions, and preparing what might be, or likely will be, revisited on appeal.

In any event, the testimony presented during the evidentiary hearing does not alter this court's earlier findings, and the court here reaffirms that any error as a result of

17

the Harris conflict and withdrawal was invited error. Further, Defendants have not sufficiently pointed to specific instances of alleged prejudice which resulted from the Harris conflict.[12] Indeed, Mr. Harris himself could not state with any degree of reliability how the work was divided. Moreover, Mr. Harris testified that it was Mr. Gurewitz who operated as lead counsel to Defendant Mikell and therefore had the "prominent" role as counsel in the trial. Likewise, whether or not Defendant Grisel relied on Mr. Harris's advice, he also had his own attorney, Mr. Herrington, who operated as his court-appointed, and undoubtedly primary, attorney.

Neither did Agent Georgeff's testimony enhance Defendants' positions. Agent Georgeff testified consistent with how he testified at trial and how this court summarized in its November 18, 2004 order. More significantly, Agent Georgeff testified during the evidentiary hearing that he provided a copy of his report to Defendants thirteen months prior to trial. This even further bolsters this court's conclusions that, first, the Government did not sandbag Defendants on the Harris issue and that, second, both Defendants well knew about Harris's entanglement in the facts prior to trial. The court also finds that Mr. Purtell's testimony did not affect this court's November 18, 2004

---

[12]The court finds the facts of this case to be significantly distinguishable to the facts of *United States v. Tatum*, 943 F.2d 370 (4th Cir. 1991), on which Defendant Mikell relied heavily during the evidentiary hearing. Aside from the fact (as even Mr. Gurewitz acknowledged) that *Tatum* is a pre-*Mickens* case, the defendant in *Tatum* pointed to specific instances where the attorney's conflicts adversely impacted the defendant's case. *Id.* at 377 ("The identified failures to seek a plea bargain, to cross-examine Greene critically, to be able to call himself as a witness on the lost file, and to attempt to shift liability from Tatum to others constituted 'actual lapses' in legal representation.") (citing *Cuyler v. Sullivan*, 446 U.S. 335, 349(1980)). Here, despite Defendants' attempts to argue that Mr. Harris's examinations of Mr. Green and Mr. Purtell were deficient, the claimed errors do not even approach the degree of certainty and specificity which were present in *Tatum.*

order, and Mr. Grisel's testimony was, in addition to being largely self-serving, largely irrelevant to the issues currently before the court.

Simply put, the court will not alter its conclusion that Defendants invited any error associated with the Harris issue. The Government did all that it reasonably could to disqualify Mr. Harris prior to trial, trying to avoid exactly the fracas that is now before the court. Defendants vigorously resisted the Government's efforts and succeeded in persuading this court to permit Harris to serve. They must abide their success.

Further, Defendants do not allege with any degree of particularity any specific prejudice that occurred as a result of Mr. Harris's alleged self-interest. The court is not convinced that, with Mr. Gurewitz and Mr. Herrington in primary control of Defendants' cases, the examinations of Mr. Green or Mr. Purtell were conducted improperly or deficiently as a result of Mr. Harris's conflict. Indeed, as this court found in its November 18, 2004, order, Mr. Harris's purported self-interest was, if anything, almost perfectly aligned with Defendants' interest in obtaining an acquittal.

While Defendants' counsel, and in particular Mr. Gurewitz, has presented the court with passionate arguments regarding the alleged unfairness of the criminal trial, the court is not persuaded. Accordingly, after carefully reviewing the submitted material, the court will deny the December 3, 2004 "Motion for Reconsideration."

## IV.  CONCLUSION

IT IS ORDERED that Defendant Grisel's August 2, 2005 "Motion for Leave of the Court to File Response to Government's Post-Hearing Brief and for Hearing" [Dkt. # 422] and September 12, 2005 "Motion for Hearing on Defendant Grisel's Request for Leave to File Response to Government's Post-Hearing Brief . . ." [Dkt. # 426] are

DENIED.

IT IS FURTHER ORDERED that Defendant Mikell's December 3, 2004 "Motion for Reconsideration" [Dkt. # 391], in which Defendant Grisel joined on December 9, 2004 [Dkt. # 393] is DENIED.

Finally, IT IS ORDERED that the court will conduct a status conference in chambers with counsel only on June 12, 2006 at 2:30 p.m. The court will order an update to the presentence reports. Counsel should be prepared to outline specifically what else might be needed in preparation for sentencing.

S/Robert H. Cleland
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated: May 16, 2006

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, May 16, 2006, by electronic and/or ordinary mail.

S/Lisa Wagner
Case Manager and Deputy Clerk
(313) 234-5522