**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                       Case No. 97-CR-81493-DT

ALAN MIKELL and CHRISTOPHER GRISEL,

    Defendants.

_____/

**OPINION AND ORDER DENYING DEFENDANTS' MOTIONS FOR BOND PENDING APPEAL AND DENYING DEFENDANT'S MOTION TO STRIKE**

On May 25, 1999, Defendants Alan Mikell and Christopher Grisel were found guilty of some, but not all, of the charges listed in a 52 count Second Superseding Indictment. After the court set aside the jury verdict, the Sixth Circuit reversed in part and remanded, and the court resolved various post-trial motions, the court conducted multiple sentencing hearings that culminated on December 1, 2006. At the final sentencing hearing, the court held that Defendant Mikell would be sentenced to concurrent terms of imprisonment of 30 months, to be followed by 36 months of supervised release and that Defendant Grisel would be sentenced to concurrent terms of imprisonment of 36 months, to be followed by 36 months of supervised release. In so holding, the court granted both Defendants a substantial downward departure from the correctly calculated Sentencing Guideline range of 63-78 months. Due to the pendency of various outstanding issues, including the instant matter and objections to the Government's proposed orders of forfeiture, final judgment has not yet been entered.

Currently before the court are Defendants' motions for bond pending appeal. The matter has been fully briefed and is ripe for determination. For the reasons stated below, the court will deny both motions.

## I.  STANDARD

Under 18 U.S.C. § 3142, subject to a few exceptions, the court is required to order the detention of an individual who has been sentenced to a term of imprisonment. Specifically, § 3142 (b) provides:

> [T]he judicial officer shall order that a person who has been found guilty of an offense and sentenced to a term of imprisonment, and who has filed an appeal or a petition for a writ of certiorari, be detained, unless the judicial officer finds--
>
> > (A) by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) or (c) of this title; and
> >
> > (B) that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in--
> >
> > > (i) reversal,
> > >
> > > (ii) an order for a new trial,
> > >
> > > (iii) a sentence that does not include a term of imprisonment, or
> > >
> > > (iv) a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process.
>
> If the judicial officer makes such findings, such judicial officer shall order the release of the person in accordance with section 3142(b) or (c) of this title, except that in the circumstance described in subparagraph (B)(iv) of this paragraph, the judicial officer shall order the detention terminated at the expiration of the likely reduced sentence.

18 U.S.C. § 3143(b)(1). The Sixth Circuit has noted that § 3143 "creates a presumption against release pending appeal." *United States v. Chilingirian*, 280 F.3d 704, 709 (6th Cir. 2002).

## II. DISCUSSION

In order to grant Defendants motions for bond pending appeal, the court must find (1) by clear and convincing evidence that Defendants are not likely to flee or pose a danger to the safety of any other person or the community and (2) that Defendants have demonstrated that their appeals will raise a substantial question of law or fact likely to result in a reversal, a new trial or a reduced sentence.[1]  18 U.S.C. § 3143(b)(1).  The court finds that Defendants have satisfied the first, but not the second, requirement of this standard.

### A.  Whether Defendants are Likely to Flee or Pose a Danger to the Community

First, the court easily finds by clear and convincing evidence that Defendants are not likely to flee or pose a danger to the safety of any other person or the community. Defendants' initial appearances in this case occurred on November 25, 1997, at which time Magistrate Judge Charles E. Binder entered a $500,000 unsecured bond with respect to each Defendant.  Since that time, Defendants have remained on bond without any incident or cause to come before this court to review any bond condition. Additionally, both Defendants have demonstrated that they have substantial family and

---

[1] In light of the structure of this statute, the court rejects the Government's argument that Defendants must establish a substantial question of law or fact by clear and convincing evidence.  (*See* Gov't's 11/27/06 Resp. at 2; Gov't's 1/04/07 Supp. Br. at 3.)  Clear and convincing evidence is required only under subpart A, which relates to likelihood of flight.  18 U.S.C. § 3143(b)(1)(A).  It is not required under subpart B, which relates to a substantial question.  18 U.S.C. § 3143(b)(1)(B).

3

community ties. These ties, combined with Defendants' nine-year record of remaining on bond without incident, constitute clear and convincing evidence that Defendants are not likely to flee or pose a danger to the safety of any other person or the community under 18 U.S.C. § 3143(b)(1)(A).

### B. Whether Defendants' Appeals will Raise a Substantial Question

Nonetheless, the court will deny bond inasmuch as Defendants have failed to establish that their appeals will raise a substantial question of law or fact likely to result in a reversal, a new trial or a reduced sentence under 18 U.S.C. § 3143(b)(1)(B). "[A]n appeal raises a substantial question when the appeal presents a 'close question or one that could go either way' and that the question 'is so integral to the merits of the conviction that it is more probable than not that reversal or a new trial will occur if the question is decided in the defendant's favor.'" *United States v. Pollard*, 778 F.2d 1177, 1182 (6th Cir. 1985) (quoting *United States v. Powell,* 761 F.2d 1227, 1233-34 (8th Cir. 1985) (en banc)). Courts have also held that a substantial question is "either a novel question, one that has not been decided by controlling precedent, or one which is fairly doubtful." *United States v. Henson*, 663 F.Supp. 1112, 1113 (W.D. Ky. 1987) (citing *United States v. Miller,* 753 F.2d 19, 23 (3d Cir. 1985)).

The court concedes that this case has had a complicated procedural history. After a lengthy trial, the initial appeal resulted in this court's order being reversed in part and the subsequent remand required the re-examination of a case now almost ten-years old. What remains for appeal, then, is a record spanning almost a decade. Add to this that the underlying facts of this case itself are multi-faceted and technical, and the court can not say that this is a "simple" case which will present limited issues on

4

appeal.[2]  However, the mere volume of the record does not mean that Defendants are more likely to prevail on appeal.  In other words, that the case is complex and "well-lawyered" does not mean that Defendants' appeals will raise a substantial question.  Moreover, much of the complication is attributed, at least in part, to the parties' own shifting legal strategies, not to the substance of any particular issue.  (*See, eg.,* 7/12/05 Order at 21-22 (outlining the parties' changing positions on necessity of evidentiary hearing); 5/16/06 Order at 2-3 (same); 5/16/06 Order at 17 (describing Defendants' somewhat contradictory positions regarding the attorney conflict issue).)  In any event, the court finds that, even considering the multiple issues which will likely or inevitably be raised on appeal, Defendants have failed to articulate a substantial question of law or fact, or one that could go either way on appeal.

### 1.  Defendant Mikell

In his motion, Defendant Mikell argues that his appeal will raise a substantial question concerning the alleged deprivation of Mikell's right to counsel of his choice.  As alluded to above, Mikell has previously asserted various errors related the withdrawal of attorney Steve Harris in the midst of trial.  As noted by the court in its May 16, 2006 order, some of these positions have appeared to be at odds with one another:

> Defendants seem to be arguing that (1) the Government improperly introduced evidence relating to Mr. Harris and unfairly suggested that he stood as an unindicted co-conspirator, and also that (2) Mr. Harris's conflict of interest, in his alleged role as an unindicted co-conspirator, created an unfair trial because of his purported lack of zealous representation.  These two positions are, to a large extent, contradictory.  It appears that Defendants are not entirely sure whether they want to

---

[2]The Government argues that the initial appeal limited the scope of any subsequent appeals.  While that may be true, Defendants vehemently dispute this assertion, which will necessarily add to the complexity of the appeal.

>argue that Mr. Harris indeed labored under a conflict of interest or whether they want to argue that the Government improperly painted Mr. Harris as such. Because Defendants do not definitively take a position on this issue, it appears to the court that they are attempting to lay a factual basis for *both* positions, and preparing what might be, or likely will be, revisited on appeal.

(5/16/06 Order at 17.) While Mikell is certainly entitled to assert alternate theories of relief, the court is inclined to think that the conflicting nature of some of these positions will create some difficulty for Mikell on appeal. This *inclination* does not have significant bearing on the issue before the court; however, it does have some limited impact on the court's analysis of whether Mikell has identified an issue that could "go either way" on appeal.

In Mikell's current motion, he revisits the Harris conflict issue, cast in a slightly different light. Mikell argues that

>the deprivation of Alan Mikell's co-counsel of choice in the midst of a long, complex trial where co-counsel Steven Harris played a substantially active role, cross-examining key witnesses he had previously deposed in parallel civil litigation, was a fundamental problem that was brought to the court's attention during the court of trial but not addressed.[3]

(Mikell's Mot. Br. at 11.) Mikell principally relies on a recent Supreme Court case, arguing that the case effectively mandates a reversal on appeal. Mikell asserts that "in light of Justice Scalia's opinion in *United States v. Gonzalez-Lopez*, [— U.S. —, 126

---

[3]Contrary to Mikell's implication in his brief, this issue has not been prevalent in this litigation. Mikell made two passing references to a deprivation of a right to counsel of choice in his August 23, 2004 "Brief on Remand." (8/24/06 Brief at 18 & 19.) Nonetheless, in his remand brief and since that time, Mikell's focus has primarily been on whether Mikell was deprived of effective assistance of counsel when Harris withdrew, not whether Mikell was deprived of the separate right to counsel of choice. Moreover, while Mikell has raised additional arguments related to Harris's withdrawal, those arguments have been that Harris labored under a conflict of interest and, tangentially, the Government acted improperly in implicating Harris.

6

S.Ct. 2557 (2006)] . . . this court's rationale on which it rejected Defendant Mikell's motion for new trial, that he failed to show prejudice, will not be sustained by the Court of Appeals." (Mikell's Mot. Br. at 10-11.) The court's reading of *Gonzalez-Lopez*, however, does not support this argument.

In *Gonzalez-Lopez*, the Supreme Court reiterated that the Sixth Amendment's right to assistance of counsel includes both the right to effective assistance of counsel and the right to counsel of one's choice, subject to certain limitations.[4] *Gonzalez-Lopez*, 126 S.Ct. 2557, 2561-2563. The Court distinguished a violation of the right to effective assistance of counsel, "which generally requires a defendant to establish prejudice," *id.* at 2562, from a violation of the right to counsel of one's choice, which occurs the moment that the chosen counsel is erroneously withheld, *id.* at 2563.

> The right to select counsel of one's choice, by contrast, has never been derived from the Sixth Amendment's purpose of ensuring a fair trial. It has been regarded as the root meaning of the constitutional guarantee. Where the right to be assisted by counsel of one's choice is wrongly denied, therefore, it is unnecessary to conduct an ineffectiveness or prejudice inquiry to establish a Sixth Amendment violation. Deprivation of the right is "complete" when the defendant is erroneously prevented from being represented by the lawyer he wants, regardless of the quality of the representation he received. To argue otherwise is to confuse the right to counsel of choice-which is the right to a particular lawyer regardless of comparative effectiveness-with the right to effective counsel-which imposes a baseline requirement of competence on whatever lawyer is chosen or appointed.

*Id.* at 2563 (footnote and internal citations omitted). The Court further held that a

---

[4] For example, in a case such as this where counsel is retained, "the Sixth Amendment guarantees the defendant the right to be represented by an otherwise qualified attorney whom the defendant can afford to hire, or who is willing to represent the defendant without funds." *Gonzalez-Lopez*, 126 S.Ct. at 2561 (quoting *Caplin & Drysdale, Chartered v. United States,* 491 U.S. 617, 624-25 (1989)).

7

violation of the right to counsel of one's choice is not subject to harmless error review. *Id.* at 2564.

Defendant Mikell relies on *Gonzalez-Lopez* to challenge this court's previous holdings that Mikell's failure to establish prejudice was fatal to his 6th Amendment argument. (*See, eg.,* 11/18/04 Order at 23-27; 5/16/06 Order at 17-19.) Had the court specifically held that Mikell could not succeed on a theory of *violation of the right to counsel of choice* because he had not shown prejudice, then Mikell's reliance on *Gonzalez-Lopez* would be well-taken. *Gonzalez-Lopez*, 126 S.Ct. at 2563. Mikell's argument is misplaced, however, because this court's holdings were in the context of Mikell's challenge to the alleged conflict of interest and his alleged ineffective assistance of counsel,[5] which requires a defendant to establish prejudice. *Id.* at 2562.

Moreover, *Gonzalez-Lopez* is further inapplicable because Mikell has not first shown that he was erroneously deprived of his counsel of choice. In *Gonzalez-Lopez*, unlike in this case, the Government "conceded that the District Court . . . erred when it denied respondent his choice of counsel." *Id.* at 2557. The focus on appeal, therefore, was on whether prejudice must be shown and whether the violation was subject to harmless-error analysis. In this case, not only is there not a concession by the Government of a deprivation of the right to counsel of choice, the record cannot support this conclusion.

In *Gonzalez-Lopez*, with little to no comment, the trial court denied multiple requests by the defendant's chosen attorney to be admitted to the court *pro hac vice. Id.* at 2560. Subsequently, the trial court ordered that during trial the defendant could

---

[5](*See* 11/18/04 Order at 15-19; 7/12/05 Order at 22-23; 5/16/06 Order at 17-19.)

8

have no contact whatsoever with his chosen attorney, enforcing the order by placing a United States Marshal between the chosen attorney, sitting in the gallery, and the substitute attorney, sitting at counsel's table. *Id.* Analogous, or even remotely similar, facts do not exist in this case, where the court simply granted co-counsel's voluntary motion to withdraw. Mikell does not appear to argue that the court erred in granting the motion to withdraw or that the court somehow coerced Harris into filing such a motion over any objection by Mikell. Indeed, the Supreme Court noted in *Gonzalez-Lopez* that the district court "has discretion to disallow a first choice of counsel that would create a serious risk of conflict of interest." *Id.* at 2563 n.3. Rather, Mikell argues that the Government's actions leading up to the motion were improper. Far from presenting a "close question," it is unlikely that this argument will succeed on appeal.

Finally, the court notes that *Gonzalez-Lopez* itself recognized that the right to counsel of one's choice is not absolute.

> [T]he right to counsel of choice does not extend to defendants who require counsel to be appointed for them. *See Wheat*, 486 U.S., at 159, 108 S.Ct. 1692; *Caplin & Drysdale*, 491 U.S., at 624, 626, 109 S.Ct. 2646. Nor may a defendant insist on representation by a person who is not a member of the bar, or demand that a court honor his waiver of conflict-free representation. *See Wheat*, 486 U.S., at 159-160, 108 S.Ct. 1692. We have recognized a trial court's wide latitude in balancing the right to counsel of choice against the needs of fairness, *id.*, at 163-164, 108 S.Ct. 1692, and against the demands of its calendar, *Morris v. Slappy*, 461 U.S. 1, 11-12, 103 S.Ct. 1610, 75 L.Ed.2d 610 (1983). The court has, moreover, an "independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." *Wheat, supra,* at 160, 108 S.Ct. 1692.

*Gonzalez-Lopez,* 126 S.Ct. at 2565-66. Here, Mikell has not presented a

substantial question that he was erroneously deprived his right to counsel of choice. Therefore, *Gonzalez-Lopez*'s rule that prejudice need not be shown does not come into effect, and the court cannot grant his motion for bond on that basis.[6]

### 2. Defendant Grisel

Defendant Grisel has also failed to articulate a substantial question of law or fact, or one that could go either way on appeal. *Pollard*, 778 F.2d at 1182. Grisel's motion focuses on the actions of the National Farmers Organization Dairy Custodial Account ("NFO"), arguing that NFO's improper actions caused the eventual shut-down of Real Pinconning Cheese ("RPC"), which in turn effectively *forced* Defendants to sell the relevant cheese inventory at a reduced price. Grisel characterizes Defendants' actions as purely "a misstep in calculating the priorities when returning the proceeds [of the sale] to the creditors of RPC." (Grisel's Mot. Br. at 11.) Grisel makes various arguments relating to the amount of loss and the priorities of various security interests, and asserts that due to the complicated issues involved the Sixth Circuit will necessarily acquit or reduce Grisel's sentence. Finally, Grisel revisits the basis for his failed motion for new trial by arguing that newly discovered evidence of perjury of Messrs. Green and Purtell will, on appeal, compel the granting of a new trial. Despite the detailed manner in which Grisel sets forth his passionate arguments, he has wholly failed to show how any of these issues will raise a *substantial* question that will likely lead to a reversal, a new trial, a sentence that does not include a term of imprisonment, or a reduced

---

[6]To the extent that Defendant Grisel also relies on this theory to sustain his motion for bond, his reliance is even more insupportable. Harris was not Grisel's counsel, and Grisel "spill-over" effect argument is even less persuasive than Mikell's various arguments under the Sixth Amendment.

sentence to a term of imprisonment less than the expected duration of the appeal process.[7]  18 U.S.C. § 3143(b)(1).  The court has previously rejected these theories, in post-trial motions and during the sentencing hearings, and Grisel has not shown that these issues will present a close question on appeal.

Aside from various procedural deficiencies with which Grisel may have to contend (*i.e.*, the Government's argument that some, if not most, of these theories were untimely and/or waived), Grisel's theories also suffer from substantive defects.  As the court explained in it's July 12, 2005 order, actual loss of the security interest caused by Defendants' actions was not required for a conviction under 18 U.S.C. § 1343.  (7/12/05 Order at 16.)  "A defendant's intent to defraud, his actions constituting a scheme or artifice to defraud, and his use of interstate wire communications in furtherance of the scheme are separate and distinct from a defendant's success in obtaining or depriving the property interest at issue."  (*Id.* at 17.)  Thus, Grisel's assertion of newly discovered evidence of perjury, which relates to his security interest/loss arguments, is not availing because he failed to establish two of the prongs of the relevant test: that the evidence is material and not merely cumulative or impeaching and that the evidence would likely produce an acquittal.  *United States v. Braggs*, 23 F.3d 1047, 1050 (6th Cir. 1994); *United States v. O'Dell*, 805 F.2d 637, 640 (6th Cir. 1986).  "[W]hether NFO was actually duped into giving up their security interest is not sufficient to undercut the evidence supporting the wire fraud convictions."  (7/12/05 Order at 19.)  As the court has remarked in the past, much of Grisel's current argument relating to the actions of

---

[7]To the extent that Grisel argues his appeal would result in a reduced sentence, this argument is significantly undercut by the fact that the court has already granted a significant downward departure to the relevant Sentencing Guideline calculation.

11

NFO as well as the alleged perjury of Green and Purtell "may be compared to a subtle form of 'jury nullification.'" (*Id.* at 20.)  For these reasons, and for reasons expressed in the court's previous orders and during the sentencing hearing, the court is not convinced that Grisel has articulated a "substantial question" for appeal.

### III.  CONCLUSION

IT IS ORDERED that Defendants' motions for bond pending appeal [Dkt. ## 459 & 462] are DENIED.  The court will order Defendants' surrender date when it imposes final judgment in this case.

IT IS FURTHER ORDERED that Defendant Grisel's motion to strike [Dkt. # 480] is DENIED.  Grisel principally argues that the Government did not seek leave to file its supplemental brief and supporting affidavit.  Inasmuch as both Defendants have since filed responsive briefs [Dkt. ## 479 & 480], the court need not strike the Government's brief.  In a case, such as this, with mountains of motions and briefs and, indeed, supplemental briefs filed without leave of court, the court will not, at this point, limit the record.

S/Robert H. Cleland
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated:  January 22, 2007

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, January 22, 2007, by electronic and/or ordinary mail.

S/Lisa Wagner
Case Manager and Deputy Clerk
(313) 234-5522