UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                  Case No. 97-81493

CHRISTOPHER GRISEL,

    Defendant.
                                               /

**OPINION AND ORDER DENYING DEFENDANT'S
MOTION TO VACATE, SET ASIDE, OR CORRECT A SENTENCE AND DECLINING
TO ISSUE CERTIFICATE OF APPEALABILITY**

**I. BACKGROUND**

This case has already undergone a circuitous path. A lengthy trial, voluminous motions and two appeals to the Sixth Circuit have thoroughly laid out the facts of the case. Only a brief recitation of the instigating events is necessary here.

In 1993, Kraft Company sold its cheese-making plant in Pinconning, Michigan to Pinconning Cheese Company. In the years that followed, the plant would change hands, lease agreements, and names multiple times, variously operating as Dore's Pinconning Cheese (DPC), Paul's Pinconning Cheese (PPC), and Real Pinconning Cheese (RPC). Throughout that time, the plant's major milk supplier was the National Farmers Organization (NFO), a trust operating on behalf of dairy farmers to facilitate the sale of their milk. The plant struggled financially and its incarnations as PPC and RPC became indebted to NFO in the amounts of about $1,000,000 each.

In 1996, NFO notified RPC (the business entity then operating the plant) that it was holding RPC in default over its $1,000,000 debt and was exercising control over the 770,000 pounds of cheese then in inventory. NFO obtained a court order enjoining RPC from removing the cheese from the plant.

Unknown to NFO, RPC arranged to sell the inventory to Nor-Tech Dairy Advisors for $0.25 per pound, about $1.15 per pound less than the prevailing market price at the time. The inventory was to then be sold by Nor-Tech to InnoQuest, a business owned by Defendant, at a price of $0.35 per pound. The inventory was to finally be sold to multiple buyers at market price, thus netting InnoQuest a windfall profit of about $700,000. NFO was led to believe that the inventory was going to be straightforwardly sold at market prices and the proceeds would go to satisfy the security interest. With that understanding, NFO had the injunction lifted. The serial sales were initiated and the proceeds of the initial Nor-Tech sale of $0.25 per pound were distributed to NFO as its security interest. NFO's deprivation of $700,000 is the fact at issue in the government's fraud prosecution.

The case then went through lengthy litigation and appeal. A jury found Defendant guilty of multiple charges of wire fraud and conspiracy to commit money laundering but this court determined the evidence to be insufficient for such a finding and acquitted Defendant. The Sixth Circuit reversed and remanded for determination of the then-pending motions for mistrial. This court then denied the pending motions and Defendant appealed. The Sixth Circuit affirmed this court's denial of the motions. Defendant was incarcerated and this motion followed.

## II. STANDARD

Defendant filed a motion seeking a writ of *habeas corpus* under 28 U.S.C. § 2241. The court will construe that motion as one asking the court to vacate, set aside or correct a sentence under 28 U.S.C. § 2255. Under § 2255, a prisoner sentenced by a federal court "may move the court which imposed the sentence to vacate, set aside or correct the sentence" on the ground "that the sentence was imposed in violation of the Constitution or laws of the United States . . . or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). As "[§] 2255 is not a substitute for a direct appeal," *Regalado v. United States*, 334 F.3d 520, 528 (6th Cir. 2003) (citing *United States v. Frady*, 456 U.S. 152, 167–68 (1982)), "a prisoner must clear a significantly higher hurdle than would exist on direct appeal" to merit collateral relief. *Frady*, 456 U.S. at 166. Consequently, "[t]o prevail on a § 2255 motion alleging constitutional error, the defendant must establish an error of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings." *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637–638 (1993)).

Though non-constitutional errors are generally outside the scope of § 2255 relief, *see United States v. Cofield*, 233 F.3d 405, 407 (6th Cir. 2000), a defendant can prevail on a § 2255 motion alleging non-constitutional error "by establish[ing] a 'fundamental defect which inherently results in a complete miscarriage of justice, or, an error so egregious that it amounts to a violation of due process,'" *Watson*, 165 F.3d at 488 (internal quotation marks omitted) (quoting *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990)).

3

## III. DISCUSSION

At the outset, Defendant asks that the court take note that the government failed to respond in a timely manner and that it did not respond to the specific issues of Defendant's motion. Defendant asserts that in doing so, the government essentially admits Defendant's allegations. Consequently, he asks the court to grant the motion here discussed.

The government filed its response with the court on June 13, 2011, the filing deadline. That filing also included a Certificate of Service stating that the government sent Defendant a copy of the response via the U.S. Mail. Defendant points out that the response was not mailed until a week later. The government might have moved with greater haste, but Defendant was not prejudiced by the delay. He received a copy of the response, made a reply and that reply was accepted and fully considered by the court.

Defendant also asserts that the government failed to respond to the central issue he raised, actual innocence, and in doing so conceded that point. The court does not agree with that construction, but even so, the failure to respond to a particular issue does not relieve the court of making a determination as to the merits of the motion.

Defendant raises seven claims in support of his motion:

1) On its face, the panel's reasoning contradicts its conclusion and proves Defendant is innocent,

2) Defendant has a legal right to do what he did under the Uniform Commercial Code and the assertion of such right reflects no criminal intent,

4

3) There can be no scheme to defraud where NFO was informed of the sales and approved them,

4) The scheme to defraud as averred by the government asserted that the value of NFO's collateral was never reduced,

5) The panel accepted the government's rhetoric as fact and failed to consider the record. This prejudicially skewed its perception of the case. The effect was systematic and resulted in a decision that violated the Constitution,

6) Defendant asks the court to reconsider the significance of the $700,000 InnoQuest paid to RPC's innocent creditors instead of NFO,

7) The panel declared key facts to be irrelevant, but they are important, and support Defendant's innocence.

The government contends that Defendant's claims are merely repeated arguments from his previous appeals to the Sixth Circuit. It argues that a § 2255 motion is not appropriate avenue for these claims and therefore the court should deny the motion.

## A. Claims 1 and 4—Contradiction Proving Innocence

Defendant's first and fourth claims are essentially identical. He claims that there is a contradiction between the conclusions of the government and the Circuit Court regarding the reasons for his guilt and asserts that this contradiction proves his innocence. Defendant clouds the issue. At trial, the jury found that at all times the cheese was worth more than the $0.25 per pound for which Defendant sold it. By selling what was worth $1 million for $188,000 and then pocketing the difference, Defendant worked a fraud against NFO, which was entitled to the cheese or its fair value. The Sixth Circuit affirmed the sufficiency of the evidence in arriving at that

5

conclusion. There is no contradiction as Defendant alleges. His first and fourth claims fail.

### B. Claims 2 and 3—Actual Innocence

In his second and third claims, Defendant quarrels with the factual findings of the jury and the Sixth Circuit's affirming of those findings. He argues that his conduct in selling and reselling the cheese was within his rights under the UCC and that since NFO was fully informed of the sales, he cannot be guilty of fraud. As noted, "a collateral challenge may not do service for an appeal." *Frady*, 456 U.S. at 165. Defendant must show a "fundamental defect which inherently result[ed] in a complete miscarriage of justice, or, an error so egregious that it amount[ed] to a violation of due process." *Ferguson*, 918 F.2d at 630 (internal quotation marks omitted) (quoting *Hill v. United States*, 368 U.S. 424, 428). Defendant does not raise any evidence of such a defect or error. Having not satisfied the demands of a § 2255 collateral challenge, the Defendant's second and third claims fail.

### C. Claim 5—Inadequate Consideration of the Record

In his fifth claim, Defendant argues that the Sixth Circuit failed to adequately consider the record in evaluating his claim that the market value of the cheese was never established. In support of his claim, he offers a litany of reasons to believe the cheese sales were aboveboard. However, a § 2255 motion may not be used to relitigate an issue that was raised and considered on direct appeal, absent highly exceptional circumstances, *Stephan v. United States*, 496 F.2d 527, 528-29 (6th Cir. 1974) (per curiam), nor can it be used to challenge the sufficiency of the evidence.

6

*United States v. Osborn*, 415 F.2d 1021, 1024 (6th Cir. 1969) (en banc). For these reasons, Defendant's fifth claim fails.

### D. Claim 6—Subsequent Dispersal of Funds Disproves Fraud

Defendant next asks the court to consider that the $700,000 earned through reselling the cheese was given to the other creditors (not NFO). He asserts this as proof that the resale scheme was not a fraudulent one. This argument was raised on appeal and the Sixth Circuit flatly rejected it. (Dkt. # 563, Pg. ID 26.) For the same reasons rejecting his fifth claim, Defendant's sixth claim also fails.

### E. Claim 7—Dismissal of Relevant, Key Facts

In his seventh claim, Defendant argues that the Sixth Circuit's dismissal of three of his claims as irrelevant was misplaced. The merits of this argument need not be addressed as it is outside the bounds of a § 2255 motion. Such a motion must establish a "'fundamental defect which inherently results in a complete miscarriage of justice,' or, an error so egregious that it amounts to a violation of due process,'" *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1968). Defendant has not made such a demonstration and his final claim therefore fails.

## IV. CERTIFICATE OF APPEALABILITY

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability (COA) is issued under 28 U.S.C. § 2253.

A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The substantial showing

threshold is satisfied when a defendant demonstrates "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

In this case, the court concludes that reasonable jurists would not debate the court's assessment of Defendant's claims. Therefore, the court denies a certificate of appealability.

## V. CONCLUSION

IT IS ORDERED that Defendant's motion to vacate [Dkt. # 573] is DENIED.

IT IS FURTHER ORDERED that a certificate of appealability is DENIED.

                                           s/Robert H. Cleland
                                           ROBERT H. CLELAND
                                           UNITED STATES DISTRICT JUDGE

Dated: July 31, 2014

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, July 31, 2014, by electronic and/or ordinary mail.

                                           s/Lisa Wagner
                                           Case Manager and Deputy Clerk
                                           (313) 234-5522

S:\Cleland\JUDGE'S DESK\C3 ORDERS\97-81493.GRISEL.2255.wpd